# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                                **Case No. 24-CR-2-JPS-SCD**

**FERNANDO D. BOLDEN,**

    **Defendant.**

---

## RECOMMENDATION AND ORDER ON DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR A *FRANKS* HEARING

---

In December 2022, a confidential source tipped off the Milwaukee police about a local, armed drug dealer whose street name was Blessed and who the source said lived near a specific intersection in Milwaukee. The police learned that Blessed's government name is Fernando D. Bolden and that Bolden drove a vehicle registered to his suspected girlfriend at an address about a block away from that intersection. In March 2023, the police observed Bolden, a convicted felon, entering the girlfriend's residence armed with a handgun. Based on that observation, as well as the source's information and the police's own investigation, three days later the police obtained a warrant to search the residence for evidence related to the unlawful possession of a firearm. After finding contraband inside, the United States charged Bolden with several firearm and drug offenses.

Bolden has moved to suppress all evidence recovered from the residence, arguing that the search warrant was not supported by probable cause. Specifically, Bolden contends that the warrant affidavit failed to sufficiently tie him to the residence and that the police officer who submitted the warrant application misrepresented the facts and omitted crucial

information. He seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to explore the validity of the search warrant affidavit. The government opposes the motion.

Because Bolden has failed to make a substantial preliminary showing that the affidavit contained materially inaccurate information or omitted materially information, he is not entitled to a hearing to challenge the veracity of the affidavit the police used to procure the warrant. Moreover, the totality of the circumstances demonstrate that the issuing judge had a substantial basis for concluding that the search warrant affidavit established the requisite probable cause for a warrant. I will therefore recommend that Bolden's motion to suppress be denied.

## BACKGROUND

In December 2022, a confidential source told Milwaukee police that they[1] had information regarding a local narcotics dealer known as Blessed. *See* Def.'s Mot. Ex. A, ¶ 11 (electronically stored in the clerk's office). The source said the dealer approached them near 7000 West Brown Deer Road armed with a handgun and attempted to give them a sample of crack cocaine. *Id.* ¶¶ 11, 14. The source also said the dealer was a black male, was about twenty-five years old, drove a red BMW, sold one gram of crack for $60, and lived near North 43rd Street and Good Hope Road. *Id.* ¶¶ 12, 14. In February 2023, the source met the police in person, said they'd received a text message from the dealer, and gave the police the dealer's phone number. *Id.* ¶ 13.

The police attempted to corroborate the source's information. DOT records revealed that the red BMW was registered to Latia N. Johnson at a residence on North 42nd Street[2]

---

[1] Not knowing the source's gender, I will use the grammatically incorrect pronoun "they" to describe the source.

[2] The source had told the police the vehicle's license plate number.

—about a block away from 43rd and Good Hope—and the police learned that Johnson was responsible for the utilities at that residence. Ex. A, ¶¶ 15, 17. (The residence was part of a multi-family, side-by-side building. *Id.* ¶ 26.) Police records revealed that Johnson was dating a man named Fernando D. Bolden, who matched the physical description of the armed drug dealer identified by the source. *Id.* ¶ 16. The police showed the source a recent booking photo of Bolden, and the source identified Bolden as the dealer they knew as Blessed. *Id.* ¶ 18. Finally, the police consulted public court records, which revealed that Bolden was a convicted felon. *Id.* ¶ 19.

On March 21, 2023, Milwaukee police detective Richard Ticcioni observed Bolden enter the 42nd Street residence armed with a handgun. *See* Ex. A, ¶¶ 20–24. Ticcioni had been staking out an unrelated narcotics complaint in the rear parking lot of the building when a silver Nissan parked nearby. The driver of the Nissan exited the vehicle holding a silver handgun, placed the gun in his pants pocket, walked to the rear door of the 42nd residence, and entered the residence. Ticcioni captured the incident on video, *see* Def.'s Mot. Ex. B (electronically stored in the clerk's office), and the police confirmed that Bolden was the person depicted in the video entering the residence while armed with a gun, *see* Ex. A, ¶ 24.

Three days later, on March 24, 2023, Milwaukee police officer Matthew Brooks applied for a warrant to search the 42nd Street residence, the red BMW, the silver Nissan, and any individuals on the premises for evidence related to Bolden's unlawful possession of a firearm. *See* Ex. A. In support of the search warrant application, Brooks submitted an affidavit describing his training and experience, the source's information, the police's efforts to corroborate that information, and Detective Ticcioni's observations. *See id.* at 3–7. Brooks indicated that he believed the source was credible given that they'd previously provided

3

information to the police that resulted in over twelve search warrants that directly led to the arrest of more than twenty-four individuals in Milwaukee for drug and firearm offenses. Ex. A, ¶ 9. As for Ticcioni's observations, Brooks noted that Ticcioni "stated that the driver [of the silver Nissan] walked to the rear door of the [42nd Street residence], used keys to open the rear door, and entered the residence." *Id.* ¶ 22. According to Brooks, the video Ticcioni captured corroborated his statement. *Id.* ¶ 24. Specifically, the video showed Bolden exit the driver side of the Nissan "holding a sliver handgun in his right hand, placing the silver handgun in his right pants pocket[] while walking away from the Nissan towards the rear door, and ultimately entering the rear door of [the 42nd Street residence]." *Id.* Brooks also indicated that the source had told him Bolden was driving a silver sedan near 43rd and Good Hope within the last three days and that Bolden also drove a red BMW. *Id.* ¶ 25. Finally, Brooks stated that, based on his training and experience, "persons engaged in criminal activity frequently store and maintain weapons in their homes and/or automobiles and leave them on the premises for extended periods of time." *Id.* ¶ 28.

A Milwaukee court commissioner authorized the warrant, and the police executed it a few days later. *See* Ex. A, at 1–2; *see also* Def.'s Mot. 3, ECF No. 27. They first arrested Bolden at a nearby gas station and recovered a handgun on his person. Def.'s Mot. 3–4. Inside the residence they located additional firearms, some drugs, cash, and personal paperwork belonging to Bolden.

In January 2024, a federal grand jury indicted Bolden for unlawfully possessing a firearm, possessing with intent to distribute controlled substances, possessing a firearm in furtherance of drug trafficking, and distributing controlled substances. *See* Indict., ECF No. 1. The matter is assigned to United States District Judge J.P. Stadtmueller for trial and to me

4

for resolving pretrial motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. On June 28, 2024, Bolden filed a motion to suppress evidence and a request for a *Franks* hearing. *See* Def.'s Mot. The government filed a brief response to the hearing request, Govt.'s Hr'g Resp., ECF No. 29, and a substantive response to the suppression motion, Govt.'s Resp., ECF No. 32. Bolden submitted his reply on August 2, 2024. *See* Def.'s Reply, ECF No. 35.

## DISCUSSION

Bolden seeks to suppress all evidence recovered from the 42nd Street residence, arguing that the search warrant was not supported by probable cause. He further argues that, to the extent probable cause did exist, it did so based only on Officer Brooks' material misrepresentations. Bolden requests a *Franks* hearing to prove the invalidity of the warrant and, ultimately, an order suppressing all evidence recovered and derived from that search. The government contends that Bolden's motion should be denied because he has failed to demonstrate he has "standing" to challenge the search, because the warrant was supported by probable cause, and because he has failed to show that he is entitled to a *Franks* hearing. Alternatively, the government maintains that, even if Bolden has standing and the warrant was invalid, no evidence should be suppressed because the officers who executed the warrant relied on it in good faith.

## I.     Bolden Has "Standing" to Challenge the 42nd Street Warrant

"The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 584 U.S. 395, 410 (2018). "A defendant can establish this personalized interest in one of two ways. First, he may object to the 'physical intrusion of a constitutionally protected area' in which

he has a property interest." *United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020) (quoting *United States v. Jones*, 565 U.S. 400, 407 (2012)). "And second, he may object to government action that violates a 'reasonable expectation of privacy . . . in the place searched.'" *Id.* (quoting *Byrd*, 584 U.S. at 404). "A reasonable expectation of privacy exists when '(1) the complainant exhibits an actual (subjective) expectation of privacy and, (2) the expectation is one that society is prepared to recognize as reasonable.'" *United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002) (quoting *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir. 1995)).

There's no real dispute that Bolden has a personalized interest in the place searched. The government argues that Bolden disclaimed any personalized interest in the 42nd Street residence in his suppression motion. Bolden, however, never said he didn't reside there; rather, he insisted that the search warrant affidavit failed to sufficiently establish he did. Alleging that the affidavit failed to show a nexus between the defendant and the residence searched does not amount to forfeiture or waiver of standing. Moreover, Bolden maintains that, upon searching the residence, officers located Bolden's clothing and personal identifiers (e.g., mail, a birth certificate, a driver's license, receipts, credit cards, a food stamp card, an insurance card, etc.) in the main bedroom, that Bolden had keys to the residence and a safe located therein when he was arrested, and that the police confirmed Bolden and Latia Johnson (the person who did live there) were dating and had a child together. The government does not dispute any of these proposed facts. Thus, I am satisfied that Bolden has "standing" to challenge the search of the 42nd Street residence.

6

## II. Probable Cause Supported the 42nd Street Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Where, as here, "an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003)). "To determine whether probable cause existed, the court must ask whether, 'based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* (quoting *Peck*, 317 F.3d at 756); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (holding that probable cause requires "a fair probability that contraband or evidence of a crime will be found in a particular place"). "The [issuing] judge's finding of probable cause 'carries a strong presumption of correctness.'" *United States v. Harris*, 996 F.3d 451, 461 (7th Cir. 2021) (quoting *United States v. Sanchez-Jara*, 889 F.3d 418, 421 (7th Cir. 2018)). Accordingly, my "task as 'a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed.'" *Id.* (quoting *Gates*, 462 U.S. at 238–39).

Bolden concedes that the affidavit established probable cause that he had committed a crime. The video captured by Detective Ticcioni clearly shows Bolden, a convicted felon, placing a handgun in his pants pocket. Bolden also doesn't seriously dispute that the affidavit established probable cause to search his residence. Officer Brooks stated that, based on his training and experience, people who illegally possess firearms frequently store them in their homes. Nevertheless, Bolden argues that the affidavit failed to establish probable cause that

7

he lived at the place searched and, according to Bolden, police had to establish the 42nd Street location as his residence in order for probable cause to exist.

The government first argues that Bolden's residency is immaterial because Detective Ticcioni personally observed him enter the residence with a firearm three days before Officer Brooks applied for the warrant. According to the government, the mere fact that Bolden had access to the residence alone constitutes probable cause that evidence of a crime would be found inside. I disagree. The government provides no authority to support its sweeping statement that a criminal's mere access to a residence is sufficient to establish probable cause to search it. In requesting a warrant, the police need a reasonable expectation that evidence of a crime will be found: "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238. Here, the crime alleged in the warrant application was illegal possession of a firearm. *See* Ex. A, at 1, 7. The warrant said possible evidence of that crime would include firearms, ammunition, shell casings, magazines, receipts related to firearms purchase, cleaning kits, holsters, and documentary evidence linking Bolden to the residence. *See id.* This kind of evidence would be unlikely to be found somewhere merely because Bolden had *access* to that location or because he visited the location once in a while. Instead, it's the kind of evidence someone might have at their own residence or at a place they stay with some frequency. Accordingly, the government would have to establish more than mere access to a given location before being entitled to search it for evidence of illegal possession of a firearm.

The affidavit here does contain sufficient facts from which the issuing judge reasonably could infer that Bolden's connection to the residence was much more substantial than the

8

single visit witnessed by Detective Ticcioni.[3] "[I]n issuing a search warrant, a [judge] is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013) (quoting *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997)). First, Ticcioni observed Bolden approaching the residence with keys in his hand. Although short-term or transient guests might sometimes be given keys by the owner, keys are more typically associated with someone who resides in a location and has full access. *United States v. Kenner,* 370 F. App'x 281, 287 (3d Cir. 2010) (defendant had "keys, which suggests he was a resident, and not merely present, at a premises where drugs were recovered"). Thus, although the fact that Bolden appeared to use keys to enter the residence does not conclusively prove he lived there, it is suggestive of some kind of permanency, which means he might very well keep evidence relating to the crime (the gun itself, ammunition, a gun case, possibly a cell phone, etc.) on the premises.[4]

Other facts are also suggestive of a substantial connection to the residence. Detective Ticcioni observed Bolden park and enter the residence in the mid-morning, which is mildly suggestive of someone who stays there rather than someone making a mere social call. More importantly, the fact that both cars identified by the source were parked outside is another strong link to the residence. The source stated that Bolden lived near 43rd and Good Hope

---

[3] The affidavit didn't explicitly allege that Bolden *lived* at the 42nd Street residence. *Cf. United States v. Hunter*, 86 F.3d 679, 681–82 (7th Cir. 1996) (finding that an affidavit sufficiently established that the defendant resided at the place searched because it referred to the defendant's residence, described the address to be searched as a "residence," and did not reference any other place connected to the defendant).

[4] As explained below, in the video, the actual moment Bolden opens the door is obscured by the red BMW. There is thus some dispute as to whether he used the keys to open the door. However, based on the circumstances, I conclude that reasonable people in the shoes of Detective Ticcioni would have assumed Bolden used the keys to open the door because he carried them *to* the door as though about to use them.

9

and had been driving a red BMW, and now law enforcement spotted that car right outside the residence's door. That means, presumably, that Bolden is coming and going from the residence using the cars that are registered to that residence *and parked there*. The source also stated that the man they knew as Blessed went armed with a handgun, that Blessed drove a red BMW, and that the source had seen Blessed driving a silver sedan near 43rd and Good Hope within the last three days. These assertions all proved true. The affidavit further indicated that the source identified Bolden as the dealer they knew as Blessed. Finally, the affidavit stated that the red BMW was registered to Johnson at the 42nd Street residence, that the utilities for that residence were in Johnson's name, and that Johnson and Bolden were dating. So, this wasn't just a random residence where the police spotted Bolden; it was the residence of a girlfriend and the location where the two cars he'd been identified driving were parked. While none of these links would establish probable cause on their own, the combination of them supplies more than enough probable cause to believe evidence of Bolden's crime might be found in the residence.

Bolden insists that the source's claim that he lived near 43rd and Good Hope shouldn't factor into the probable cause calculus because the affidavit doesn't provide the basis of the source's information. "When the information used to support a finding of probable cause is derived from a [confidential informant's] tip[,] 'the legitimacy of a probable cause determination turns on that CI's reliability, veracity and basis of knowledge.'" *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (quoting *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005)). Because probable cause is based on the totality of circumstances, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462

U.S. at 233. In assessing an informant's credibility, the issuing judge may consider various factors, including (1) "the degree to which the informant acquired knowledge of the events through firsthand observation"; (2) "the detail and specificity of the information provided by the informant"; (3) "the interval between the date of the events and a police officer's application for the search warrant"; and (4) "the extent to which law enforcement corroborated the informant's statements." *United States v. Cherry*, 920 F.3d 1126, 1133–34 (7th Cir. 2019) (quoting *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011)). Also relevant is "whether the informant appeared before the judge." *Haynes*, 882 F.3d at 665 (citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)).

Some of the factors weigh against the source's credibility. The source didn't know Bolden's name, only his nickname. The affidavit doesn't specify when Bolden attempted to give the source a sample of crack cocaine. The source didn't provide any predictive information about Bolden's alleged illegal conduct. The source didn't explain why they believed Bolden lived near 43rd and Good Hope. (They didn't claim, for example, that they'd been to the residence in the past.) And the source didn't appear personally before the judge who issued the search warrant.

Other factors, however, strongly tip the scales in favor of the source's credibility. First, the source was not an anonymous tipper. They had a long history of working with the police and had provided reliable information in the past resulting in some 24 arrests. *See* Ex. A, ¶ 9. Second, the source provided detailed information that was based largely on firsthand knowledge. The source described the specific location where Bolden approached them armed with a handgun and tried giving them crack cocaine; the source noted Bolden's race and approximate age; the source identified the color, make, and license plate number of the

11

vehicle Bolden drove; the source knew how much Bolden charged for a gram of crack; and the source gave the police Bolden's phone number. *See id.* ¶¶ 11–14. Third, most of the source's information was recent. The source told the police they had information about Bolden in December 2022, the source met with Officer Brooks in early February 2023, and the source told Brooks they'd seen Bolden driving a silver sedan near 43rd and Good Hope just a few days before Brooks applied for the warrant on March 24, 2023. *See id.* ¶¶ 11, 13, 25. Finally, although the police didn't confirm that Bolden lived near 43rd and Good Hope, they uncovered several details suggesting that he did (or at least spent a considerable amount of time there). The red BMW was registered to Bolden's girlfriend at an address about a block away from that intersection, Detective Ticcioni saw Bolden park in the rear lot of that address and enter using keys and while armed with a handgun, and the source saw Bolden recently driving in that area. *See id.* ¶¶ 15–17, 20–25. In sum, although there are a few reasons to question the source's statements, the source was able to provide detailed information that proved to be correct. Under these circumstances, it would have been strange for the police to have questioned the notion that Bolden lived near 43rd and Good Hope when everything else the source told them proved correct.

Bolden also accuses Officer Brooks of not providing the basis for concluding that Johnson was Bolden's girlfriend. Not true. The affidavit explicitly says that Brooks consulted "Milwaukee Police Department resources." Ex. A, ¶ 16. He did not need to disclose what those resources were or explain how those resources demonstrated Johnson and Bolden were dating.

Finally, Bolden says the fact his alleged girlfriend lived at the 42nd Street residence doesn't suggest that he did or that he'd likely store his firearm there. The affidavit, however,

12

did not allege that Bolden was *living* there in a formal sense, nor that he was hiding his gun (and related evidence) at his girlfriend's house. Rather, the affidavit provided specific facts suggesting that Bolden stayed there, too: the source indicated that Bolden lived in the area and that he drove a vehicle, which proved to be registered at the 42nd Street residence; Detective Ticcioni observed Bolden park in the building's rear lot and stated Bolden used keys to enter the residence's rear door; and the source saw Bolden recently driving in the area. While accessing a residence with keys, alone, may not be enough to establish that Bolden lived there, it does show that Bolden was closely associated with the residence and was able to enter as he pleased. He did not park on the street or enter through the front door, as a normal guest would. And here, as explained above, the use of keys wasn't the only thing tying Bolden to the residence.

Ultimately, even if Bolden is correct that the facts contained in the warrant application do not establish that he "lived" at the 42nd Street residence in a traditional sense, that supplies an answer to the wrong question. It's true that some of the cases Bolden relies on, such as *United States v. Grandberry,* turn on whether the defendant *lived* at a residence. 730 F.3d 968 (9th Cir. 2013) (police conducted a warrantless search on a parolee on the basis that they thought the residence was his, based in part on his possession of a key). But, as noted above, the analysis here is not so formal; it requires the police merely to have probable cause that evidence would be found somewhere, not that the suspect have a specific kind of relationship with the place to be searched. That's partly because it's not uncommon for individuals, particularly if they are engaged in ongoing illegal activity, to "live" at more than one location. *See, e.g.*, *United States v. Thompson*, 402 F. App'x 378, 384 (10th Cir. 2010) ("Here, although police may have reasonably believed Thompson lived at 2213 N. Kelham, it was also

reasonable for them to believe he lived at 4619 Creek Court."). Maybe they spend five nights a week at one place and two at the other, or vice-versa. Some individuals might have more than two such locations. The more relevant question is: does the defendant have a significant enough connection with the residence such that the police might reasonably expect to find evidence of illegal activity there? Put another way, on March 21, 2023, did the police merely happen to witness Bolden visiting the residence of an acquaintance, or did it appear that he was entering a place where he spent a substantial amount of time? Here, Bolden's apparent use of keys, the entry into the residence without assistance (keys or not), the fact that both cars associated with him were parked outside, the time of day, and the fact that it was the residence of someone romantically associated with him were more than enough for law enforcement to believe his visit to the residence was not that of a casual visitor but of someone who might be expected to leave evidence of his criminal activity in that location.

## III.    Bolden Has Failed to Demonstrate That He's Entitled to a *Franks* Hearing

Bolden argues that even if the affidavit established probable cause, that's because it contained materially false statements and omitted material information. A defendant is entitled to a *Franks* hearing only if he makes "a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155–56)). "*Franks* also applies to deliberately or recklessly deceptive omissions." *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (citing *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006)). "*Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary

14

showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant"—that is, the law enforcement officer who sought the search warrant. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citing *Franks*, 438 U.S. at 171). The inquiry is "not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false." *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (citing *Jones*, 208 F.3d at 603).

Consequently, "[t]he defendant must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he 'in fact entertained serious doubts as to the truth of his allegations' or had 'obvious reasons to doubt the veracity of the allegations.'" *Jones*, 208 F.3d at 607 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). To meet this "substantial" burden, the defendant must make allegations, accompanied by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "The defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the claim of falsity should be substantiated by the sworn statements of witnesses." *McMurtrey*, 704 F.3d at 509 (citing *Franks*, 438 U.S. at 171). "To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent." *Id.* (citing *Franks*, 438 U.S. at 171–72). Accordingly, "*Franks* hearings are rarely required." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citing *Maro*, 272 F.3d at 821).

Bolden argues that the search warrant affidavit contained two materially false statements and several material omissions. According to Bolden, Officer Brooks falsely swore

15

that Detective Ticcioni stated that the driver of the silver Nissan used keys to enter the 42nd Street residence and that Ticcioni's video corroborated his statement. Bolden also accuses Brooks of omitting information that Bolden lived elsewhere and details about the source's criminal history and reason for cooperating with the police. I conclude that Bolden has failed to make a substantial preliminary showing warranting a *Franks* hearing in this case.

### A. The affidavit contains no false statement

Bolden has failed to demonstrate that the affidavit contained a false statement. Officer Brooks indicated in the affidavit that "Detective Ticcioni stated the driver walked to the rear door of [the 42nd Street residence], used keys to open the rear door, and entered the residence." Ex. A, ¶ 22. Bolden claims that statement is misleading because Ticcioni's police report states that Bolden entered the residence "with keys," not that he "used keys to open the rear door." However, Bolden did not attach a copy of the police report to his suppression motion or his reply brief, so I'm unable to access the veracity of Brooks' recitation. In any event, it is a hair-splitting point of questionable relevance. As discussed below, it's clear (and Bolden concedes) he entered the door with keys in his hand, and, given the obstructed view shown in the video, Ticcioni was entitled to make the common-sense assumption that Bolden *used* the keys to enter the door.

Moreover, Officer Brooks did not claim that the video *showed* Bolden using keys to enter the residence. Instead, Brooks indicated that he reviewed the video and that the video "corroborated Detective Ticcioni's statement." Ex. A, ¶ 24. My viewing of the video convinces me that Bolden did use keys to unlock the rear door, or at least that it would have been extremely reasonable to assume that he did. The video shows Bolden taking keys out of his right pants pocket (apparently to make room for the gun) and transferring them to his left

hand as he approached the door. *See* Ex. B, at 00:00–00:15. It's possible that he then used the key fob to lock his car, as he says. But even if that is true, he kept the keys in his hand rather than placing the keys back in his pocket. He then carries the keys to the door in his left hand, as if planning to use them to open the door. He pauses in front of the door for about five seconds, possibly to find the right key. He then opens the screen door and then enters through the primary door. It does not appear that anyone let him inside the residence. *See id.* at 00:15–00:25. Although the video does not allow us to see him doing so, one would expect that Bolden had the key ready in his left hand and simply turned the key in the lock and then pushed the door open. The video thus "corroborates" the proposition that Bolden used keys to open the door even if it does not explicitly show him doing so.

The assumption that Bolden used the keys to unlock the door is bolstered by common experience, which teaches that most residential doors are locked. *United States v. Banks,* 540 U.S. 31, 37 (2003) (noting that "most people keep their doors locked"). In short, Bolden carried keys to a door the officer could assume was locked, and then the video shows him entering the door without being let in. It's hardly a leap of faith to believe that during the few seconds of obstructed view he used the keys for their intended purpose. In fact, for the officer to assume he *didn't* use the keys would require two unlikely things to be true: first, that the door of an apartment in Milwaukee was *un*locked, and second, that Bolden carried a large set of keys to the door without intending to use them to open that door. Sure, it's possible the door was unlocked and that Bolden didn't even have keys to the apartment. But the probable cause analysis demands that officers use common sense. Here, the officer saw a man bring a set of keys to a door that was probably locked, and then, after a brief obstruction behind the red BMW, the man opened the door. Common sense would require an assumption that the

17

keys Bolden had in his hand were the keys that opened the door. Accordingly, there was nothing misleading in Officer Brooks' statement that the video "corroborated Detective Ticcioni's statement." Ex. A, ¶ 24.

Even if there were something misleading about Officer Brooks' assertion that the video corroborated Ticcioni's statement, the additional context he provided in the affidavit would have dissipated any confusion. He said:

> Upon viewing the video, affiant positively identified the driver who had the gun as Bolden. The video depicts the driver who exiting [sic] the driver side of the Nissan Altima holding a sliver handgun in his right hand, placing the silver handgun in his right pants pocket[] while walking away from the Nissan towards the rear door, and ultimately entering the rear door of [the 42nd Street residence].

Ex. A, ¶ 24. This statement doesn't mention the keys at all, which would have at least implied to the issuing judge that the video did not conclusively show Bolden using the keys. In short, Officer Brooks was not overplaying his hand. Thus, the affidavit read in its entirety would not mislead the reviewing judge into believing the video conclusively showed Bolden using keys to enter the apartment.

### B.    There are no misleading omissions

Bolden has also failed to demonstrate that Officer Brooks intentionally omitted material information. First, he claims Brooks omitted information showing that Bolden lived somewhere else. Brooks indicated that he learned Bolden and Johnson were dating by reviewing Milwaukee police records and that he confirmed Bolden was a felon by checking public court records. Ex. A, ¶¶ 16, 19. According to Bolden, the only known public record that links him to Johnson is a December 2022 paternity action; the docket for that case says Bolden lived in the 9300 block of West Allyn Street—more than five miles away from 43rd and Good Hope. *See* Def.'s Mot. 12 (citing *In Re the Paternity of K.A.B.*, Milwaukee County

18

Case No. 2022PA002721PJ). Bolden, however, merely speculates that Brooks was aware of the paternity case. Brooks says he learned of the relationship via internal police records, not public court records, and it's not unreasonable for him to have skipped over the paternity action when checking Bolden's criminal history. Because it's far from clear that Brooks knew about the paternity case, it is purely speculative to suggest that he deceptively omitted from the affidavit information showing that Bolden lived somewhere else. In addition, it's important to remember that the probable cause question does not turn on Bolden's official address so much as whether he had a substantial enough connection to the searched residence that evidence of a crime might be found there. The fact that he might have "lived" at a different residence at the time of the paternity lawsuit doesn't mean he lacked a significant connection with the 42nd Street residence the police searched in March 2023 (as the results of the search here amply demonstrate).

Bolden also challenges the information Officer Brooks omitted about the confidential source's criminal history. Bolden says that Brooks' devious intent can be inferred from the omission itself. As support, he cites *United States v. Glover*, which held that "[a]n officer's omission from the probable cause affidavit of known and substantial adverse information about the informant's credibility is sufficient to support a reasonable inference of recklessness." 755 F.3d 811, 820 (7th Cir. 2014). But *Glover* never said that inference is automatic in all cases with credibility omissions. And in *Glover* the omissions were glaring and included the source's past deceptions of the police: "Doe had been an informant for the Chicago police for six years. He had been affiliated with a gang. He had fourteen criminal convictions, including four for crimes committed while he was working as an informant. On two prior occasions, Doe had used aliases when questioned by police officers." *Id.* at 814.

19

Given these omissions, the court concluded, "the magistrate might have inferred, based on Doe's past work as an informant, that he was reliable despite his criminal record, past deception of the police, and financial motives. Yet the omitted information could also easily have supported inferences against probable cause, and the issuing magistrate had no indication that such information existed." *Id.* at 818.

Here, by contrast, we do not know if the source had *any* criminal history at all—Bolden merely notes that the affidavit omitted any mention of such a history (positive or negative). He cites Judge Scudder's advice that "Wisconsin law enforcement would do well to revisit its warrant application practices" and include the informant's criminal history as a matter of course, *United States v. Clark,* 935 F.3d 558, 573 (7th Cir. 2019) (Scudder, J., dissenting in part), but that general bit of sound advice does not warrant an adverse credibility finding or a conclusion that a *Franks* hearing is justified.

### C. The allegedly false statements and misleading omissions are immaterial

Finally, Bolden has failed to demonstrate that Officer Brooks' allegedly false statements and omissions were material to the probable cause calculus. The affidavit references Bolden using keys to enter the residence only once: in one clause within one sentence of a paragraph in a thirty-two-paragraph affidavit. If that clause were removed, the affidavit would still contain enough facts to induce a reasonably prudent person to believe that a search of the 42nd Street residence would uncover evidence of a crime. There's no dispute that Bolden unlawfully possessed a firearm and that evidence of that crime likely would be found at his residence. Other evidence, aside from the use of keys, strongly suggested that Bolden stayed at the 42nd Street residence: the source said Bolden lived in the area, Bolden drove a car registered to his girlfriend at that residence, Detective Ticcioni saw

20

Bolden park in the rear lot and enter the rear door of the residence, and the source had recently seen Bolden driving nearby the residence. To be sure, if Bolden had used keys to enter the residence, that fact would have strengthened the connection. But that connection remained strong, whether he had to unlock the door or whether he simply let himself in without using the keys.

The affidavit also would still have supplied probable cause for the search if Officer Brooks had disclosed the paternity action. That case was electronically filed in December 2022; Brooks applied for the warrant on March 24, 2023. Any negative inference that could be drawn from Bolden previously claiming a different address is overcome by the source's statement that Bolden lived near 43rd and Good Hope and Detective Ticcioni's observation of Bolden freely entering the 42nd Street residence on March 21, 2023. Also, the fact that Johnson filed the paternity action does not suggest that she and Bolden weren't dating at the time. There are many reasons why she'd want paternity adjudicated. Besides, people date, move in together, split up, move out, and get back together all the time. People also move; indeed, the very same docket says Johnson lived in the 7600 block of West Wabash Court, not the 42nd Street residence where her car was registered to and where she paid utilities just three months later. *See In Re the Paternity of K.A.B.*, *available at* https://wcca.wicourts.gov (search Milwaukee County Case No. 2022PA002721PJ).

The source's criminal history and motive weren't crucial, either. The government has never disclosed whether the source had any convictions back in March 2023 or why they were working with the police. Nevertheless, "an informant's criminality does not in itself establish unreliability. . . . Nor is an affidavit's omission of an informant's motive for providing information necessarily essential to a probable cause determination." *United States v. Taylor*,

471 F.3d 832, 840 (7th Cir. 2006). Presumably most sources who know much about the inner workings of drug operations are not Boy Scouts. The source's information here primarily concerned Bolden selling drugs. The warrant, however, sought evidence related to Bolden's unlawful possession of a firearm—a crime Detective Ticcioni witnessed firsthand (and caught on camera). Thus, the source's information was necessary only to the extent it tied Bolden to the 42nd Street residence. A lengthy criminal history or questionable motive would not have called into question the source's statement that Bolden lived near 43rd and Good Hope and drove a red BMW. (The case may be different if, for example, the source had reported Bolden sold drugs out of his residence.) This is especially true given that the source had provided reliable information in the past and that the police corroborated the key parts of the source's information when Detective Ticcioni saw Bolden park in the residence's rear lot and enter through the back door on his own three days before Officer Brooks secured the warrant. In other words, our case is consistent with other cases in which the Seventh Circuit has found the omission of facts pertaining to an informant's credibility to be immaterial. *See Clark*, 935 F.3d at 565 (discussing cases and noting that the level of corroboration is key).

In sum, Bolden has failed to show that a *Franks* hearing is warranted in this case.

## IV. The Applicability of the Good Faith Exception Depends on Whether Bolden Is Entitled to a *Franks* Hearing

"A faulty warrant and an illegal search do not necessarily entitle a defendant to suppression of evidence." *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008) (citing *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005)). "The Supreme Court announced in *Leon* . . . that suppression is inappropriate if the police officers who executed a later-invalidated search warrant did so in good faith." *Id.* (citing *United States v. Leon*, 468 U.S. 897,

923–26 (1984)). "An officer's decision to obtain a warrant is prima facie evidence of good faith." *Id.* (citing *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007); *Mykytiuk*, 402 F.3d at 777). A defendant may rebut this presumption by showing (1) "that the judge who issued the warrant abandoned his neutral, detached role and acted as a rubber stamp for the police"; (2) "that the affiant intentionally or recklessly misled the judge"; (3) "that the supporting affidavit is so lacking in indicia of probable cause that an officer's belief in its existence would have been entirely unreasonable"; or (4) "that the warrant itself is so facially deficient that the executing officers could not reasonably have believed it to be valid." *Id.* (citing *Leon*, 468 U.S. at 923; *Otero*, 495 F.3d at 398).

There's no evidence that the issuing judge here abandoned his neutral, detached role. Officer Brooks did not intentionally or recklessly mislead the issuing judge. The affidavit wasn't so bare bones that the executing officers' reliance on it was unreasonable. And the warrant itself wasn't facially deficient. Thus, even if the search warrant failed to state probable cause, the evidence recovered from the 42nd Street residence should not be suppressed, as the officers relied on the warrant in good faith. If, however, Bolden had made a substantial preliminary showing on the *Franks* issue, then a hearing would be needed to resolve the government's good faith argument. *See Glover*, 755 F.3d at 818–21 (declining to apply the good faith exception where the defendant had met his burden for a *Franks* hearing).

## CONCLUSION

In sum, the issuing judge had a substantial basis for concluding that probable cause existed to search the 42nd Street residence for evidence related to Bolden's unlawful possession of a firearm, and Bolden has failed to make a substantial preliminary showing that the police intentionally or recklessly misrepresented the facts in procuring that warrant or that

23

the alleged misrepresentations were material to the probable cause finding. Accordingly, for all the foregoing reasons, the court **DENIES** the defendant's request for a *Franks* hearing, ECF No. 27, and **RECOMMENDS** the district judge **DENY** the defendant's motion to suppress evidence, ECF No. 27.

The court directs the parties' attention to 28 U.S.C. § 636(b)(1)(A), (B), and (C), Fed. R. Crim. P. 59(a) and (b)(2), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any order or recommendation herein, or part thereof, may be filed within fourteen days of the date of service of this order and recommendation. Objections must be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge